JAMAICA GAS LIGHT CO., Plaintiff, *v.* LEWIS NIXON, Constituting the Public Service Commission of the State of New York for the First District, DENIS O'LEARY, as District Attorney of the County of Queens, CHARLES D. NEWTON, as Attorney-General of the State of New York, Defendants.

(Supreme Court, New York Special Term, February, 1920.)

Parties — actions — constitutional law — gas companies — motion of city of New York for leave to intervene granted — Code Civ. Pro. § 452.

> The city of New York, pursuant to statutory power, maintains at considerable expense stations for testing the quality and pressure of gas furnished throughout the city, for the purpose of determining whether consumers are obtaining the standard of gas prescribed by law. *Held,* that in an action brought by a distributing gas light company to test, as to it, the constitutionality of the statute (Laws of 1906, chap. 125) which provides *inter alia* that a corporation engaged in the business of selling or furnishing illuminating gas in the fourth ward of the borough of Queens shall not charge or receive more than one dollar per one thousand cubic feet of gas, the city has such an interest in litigating the questions involved as to fairly bring it within section 452 of the Code of Civil Procedure, and its motion for leave to intervene will be granted.

MOTION to intervene.

Cullen & Dykman, for plaintiff.

Terence Farley, for Lewis Nixon.

Denis O'Leary, for Denis O'Leary.

Charles D. Newton, attorney-general, for State of New York.

John P. O'Brien and Judson A. Hyatt, for city of New York.

GREENBAUM, J.   The city of New York moves to intervene as a party defendant in the above-entitled action.   The action is brought to test the constitutionality as to the plaintiff of chapter 125 of the Laws of 1906, wherein it is provided *inter alia* that a corporation engaged in the business of selling or furnishing illuminating gas in the fourth ward of the borough of Queens in the city of New York, shall not charge or receive a sum in excess of one dollar per 1,000 cubic feet of gas.   The plaintiff, in opposing this motion, relies upon the opinion of Mayer, J., filed February 24, 1919, in *Consolidated Gas Co. of New York* v. *Chas. D. Newton, as Attorney-General of the State of New York, et al.,* in a suit pending in the United States District Court for the Southern District of New York, in which a similar motion for intervention on the part of the city of New York was denied.   A study of that opinion discloses that the court reached its conclusion upon the construction which it gave to the Federal Equity rule 37, which treats of parties in equity suits.   The learned court there held that the city of New York did not have such a '' legal interest '' as was contemplated under rule 37, and therefore was not entitled to intervene.   This court, however, is obliged to determine the right of intervention under the provisions of the Code of Civil Procedure.   It thus becomes necessary to determine the effect to be given to the relevant section of the Code

affecting the rights of the parties upon this motion. Section 452 provides: "The court may determine the controversy, as between parties before it, where it can do so without prejudice to the rights of others, or by saving their rights; but where a complete determination of the controversy cannot be had without the presence of other parties, the court must direct them to be brought in. And where a person, not a party to the action, has an interest in the subject thereof, * * * and makes application to the court to be made a party, it must direct him to be brought in by the proper amendment." The vital question therefore is, has the city of New York such an interest in the subject of this action as to come within section 452 of the Code? At the outset it is proper to note that the complaint in this action differs from that in the *Consolidated Gas Company Case, supra,* in two respects: *First,* in the instant case it is alleged that the plaintiff "owns and possesses a perpetual and indefeasible interest in the lands constituting the streets and highways of said former village, in which its mains are laid." The city of New York is the trustee of the people in respect of the streets and highways within its territorial limits, and is also the owner in fee simple absolute of many streets, highways and avenues of the city. It also alleges that chapter 125 of the Laws of 1906 "impairs the obligation of the plaintiff's contracts with the city of New York and the municipality." No such allegations appear in the bill of complaint in the *Consolidated Gas Company* case. It may be that an issue may be tendered in this action respecting plaintiff's contracts with the city of New York, which makes it proper to permit the municipality to intervene. In this connection it may also be observed that the concluding paragraphs of the opinion of the learned court in the *Con-*

*solidated Gas Company Case, supra,* stated that in all the cases cited by the defendants the city of New York had a legal interest either "because a legislative act directly affecting it was attacked, or because, by reason of some franchise or some statutory provision the city had an interest or duty as matter of law." This would seem to indicate that the attention of the court was not called either to the fact that the legislative act here assailed was one that affected the city of New York, or to the various statutory provisions to which reference will presently be made. Before chapter 125 of the Laws of 1906, which is the legislative act herein attacked, became a law, it was referred to the city of New York for acceptance or rejection, in accordance with the mandatory provisions of article 12, paragraph 2, of the state Constitution, which imposes the duty upon the state legislature to refer all bills "affecting property, affairs or government of cities" to it for acceptance or rejection. It thus appears that chapter 125 of the Laws of 1906, although applicable solely to private consumers in the city of New York, was nevertheless referred to the city, for the ostensible reason that it was a bill which related to "affairs" of the city within the meaning of the state Constitution, and that after its acceptance by the city it became a law. By chapter 429 of the Laws of 1907 the legislature created a public service commission, and invested it with the powers of the commission of gas and electricity, which had been created by chapter 737 of the Laws of 1905. Chapter 604, Laws of 1916, which amended chapter 125 of the Laws of 1906, also became a law only after its acceptance by the city of New York, thus again evidencing the fact that the city of New York was recognized by the legislature as having an interest in the matter of gas rates affecting

32

consumers in the city of New York and that notwithstanding there then existed a public service commission, which was charged with active duties which included matters pertaining to the manufacture and distribution of gas.  It should also be borne in mind that the determination of the constitutional question presented in this action necessarily involves findings of facts touching the reasonable cost of production and distribution of gas.  If it be found that the cost of manufacturing and distributing the gas is more than seventy-five cents per 1,000 cubic feet, which is the rate fixed by chapter 736 of the Laws of 1905 for gas furnished to the city, the latter might be greatly embarrassed in any subsequent action assailing the constitutionality of that law, even though a decree may not be *res adjudicata* as to it in the present action.  As bearing upon the question under discussion consideration should be given to the provisions of what is known as the Home Rule Law, being chapter 247 of the Laws of 1913.  It is there provided, among other things, that the city has power to "maintain order, enforce laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto."  Section 21 of the Home Rule Law defines the general meaning of the term "general welfare" in that act as including "health, safety, comfort and convenience."  The comfort and convenience of the people of the city of New York would be seriously affected if the heating and illuminating qualities of the gas are not up to the legal standard.  In section 469 of the Greater New York charter power is conferred upon the commissioner of water supply, gas and electricity to inspect and test "gas and electricity used for light, heat and power purposes."  It appears in the moving affidavits that the city maintains at con-

siderable expense stations for testing the quality and pressure of gas furnished throughout the city to the private consumer for the purpose of determining whether the consumer is obtaining the standard of gas prescribed by law. Consideration should also be taken of the provisions of section 71 of the Public Service Commissions Law, which expressly authorizes the commission to receive and consider the complaint of the mayor of the city of New York as to the price, pressure, purity and quality of the illuminating gas furnished to the people of the city. In this connection we may quote from *International Railway Company v. Rann,* 224 N. Y. 83: "A municipal corporation consists, however, of both territory and inhabitants. As a legal conception, the corporation is an entity distinct from its inhabitants, but it remains a local community; a body of persons; the sum total of its inhabitants and the proper custodian and guardian of their collective rights." We also find in section 255 of the Greater New York charter, as amended by chapter 466 of the Laws of 1901 and chapter 602 of the Laws of 1917, that: " The corporation counsel, except as otherwise herein provided, shall have the right to  *  *  * defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city or any part or portion thereof, or of the people thereof *  *  *." We thus find a specific legal duty devolving upon the corporation counsel to defend the " rights and interests  *  *  * of the people " of the city of New York. It cannot be gainsaid that the people of New York have a vital collective interest in the determination of the issues involved in this action. It is claimed that the public service commission is the legal defender of the rights of the people with respect to such a question as is involved in this action. As a matter of fact we also find that the district attorney as well

as the attorney-general of the state has special duties to perform in enforcing the laws regulating the price and quality of gas. The public service commission is a state body, and is not exclusively or specially vested with the duty of safeguarding the interests of the people of the city of New York. The obligations placed upon the public service commission are not inconsistent with those which devolve upon the city of New York as custodian of the rights of the people entitling it to join in the defense of this action. It seems to the court that in view of all the considerations above set forth, the city of New York has such an interest in litigating the questions involved in this action as fairly to bring it within the provision of section 452 of the Code so as to constitute it a proper, if not indeed a necessary, party thereto, and to justify the exercise of the court's discretion in granting the motion.

Ordered accordingly.