[L. A. No. 25089. In Bank. June 23, 1959.]

COUNTY OF SAN BERNARDINO et al., Respondents, v. HARSH CALIFORNIA CORPORATION (a Corporation), Defendants; UNITED STATES OF AMERICA, Intervener and Appellant.

Charles K. Rice, Assistant Attorney General, Lee A. Jackson and John J. Crown, Department of Justice, Laughlin E. Waters, United States Attorney, Edward R. McHale, Assistant United States Attorney, and Melvin L. LeBow for Appellant.

Albert E. Weller, County Counsel, and John B. Lawrence, Deputy County Counsel, for Respondents.

TRAYNOR, J.—The United States of America appeals from an order denying its motion for leave to intervene in an action to recover unsecured personal property taxes.

Defendant Harsh is the operator of a Wherry Act Military Housing Project located on federally owned land at the Marine Corps Supply Center near the town of Barstow. Defendant operates the project under a 75-year lease from the United States executed pursuant to title VIII of the National Housing Act. (12 U.S.C.A. §§ 1748-1748h.) Under the terms of the lease, defendant built 337 family dwelling units for occupancy by those military and civilian personnel designated by the United States. Title to all improvements and personal property installed therein is in the United States. The United States agreed to furnish fire and police protection, if available, and retained the right to regulate the rents charged to the subtenants.

In 1956, the Supreme Court of the United States held that Congress had consented to the taxation by local authorities of a lessee's possessory interest in a Wherry Act housing project. (*Offutt Housing Co.* v. *County of Sarpy*, 351 U.S. 253 [76 S.Ct. 814, 100 L.Ed. 1151].) Congress then amended the National Housing Act (§ 408 [as amended by § 511, Housing Act of 1956, ch. 1020, 70 Stat. 1110-1111]) to provide that:

". . . Nothing contained in the provisions of title VIII of the National Housing Act in effect prior to August 11, 1955, or any related provision of law, shall be construed to exempt from state or local taxes or assessments the interest of a lessee from the Federal Government in or with respect to any property covered by a mortgage under such provisions of title VIII; *Provided*, That, no such taxes or assessments (not paid or encumbering such property or interest prior to June 15, 1956) on the interest of such lessee shall exceed the amount of taxes or assessments on other similar property of similar value, less such amount as the Secretary of Defense or his designee determines to be equal to (1) any payments made by the Federal Government to the local taxing or other public agencies involved with respect to such property, plus (2) such amount as may be appropriate for any expenditures made by the Federal Government or the lessee for the provision or maintenance of streets, sidewalks, curbs, gutters, sew-

ers, lighting, snow removal or any other services or facilities which are customarily provided by the State, county, city, or other local taxing authority with respect to such other similar property. . . ." (42 U.S.C.A. § 1594, note.)

The designee of the Secretary of Defense, in accordance with section 511, *supra*, determined that Harsh was entitled to a reduction of $27,759 with respect to assessments for the 1957-1958 tax year. The assessor, however, sent Harsh a tax bill for the full amount of its assessment without any reduction.

The county brought this action to recover taxes and penalties in the amount of $23,099.04. Defendant pleaded that the designee of the Secretary of Defense had determined that defendant was entitled to a reduction of $27,759 in its taxes, that notice of this determination had been served on plaintiff's board of supervisors, and that plaintiff had refused to comply with this determination.

The United States filed a petition and proposed answer in intervention. It alleged that it had paid more for facilities or services normally provided by the local taxing agencies than the amount of the taxes levied against defendant's possessory interest, that the money so paid was in lieu of taxes, and that pursuant to federal law the Secretary of Defense had notified the county board of supervisors of his determination that the local taxes on defendant's possessory interest must be reduced by $27,759.

Section 387 of the Code of Civil Procedure provides:

"At any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant. . . ."

The United States contends that the matter in litigation includes the validity and operation of the federal statute, that it has an interest therein, that it seeks to unite with defendant in resisting plaintiff's claim, and that it is therefore entitled to intervene. Plaintiff contends that the interest of the United States is not "of such a direct and immediate character that"

the United States "will either gain or lose by the direct legal operation and effect of the judgment" (*Elliott* v. *Superior Court*, 168 Cal. 727, 734 [145 P. 101]; see also *Allen* v. *California Water & Tel. Co.*, 31 Cal.2d 104, 109 [187 P.2d 393], and cases cited), and that leave to intervene was therefore properly refused. It points out that neither the legal nor economic incidence of the tax on defendant's possessory interest falls on the United States (see *De Luz Homes, Inc.* v. *County of San Diego*, 45 Cal.2d 546, 570 [290 P.2d 544]), that a decision upholding or invalidating the tax will affect the rents defendant may charge government personnel indirectly or not at all and therefore even more remotely the United States, and that the interest of the United States in securing a favorable precedent is alone not enough to support intervention. (See *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 661, 664 [91 P.2d 599].)

It may be conceded that the outcome of plaintiff's action will not directly affect the federal fisc. The payments claimed to be in lieu of taxes have been made, if defendant loses it cannot recoup its tax payments from the United States (*cf. General Dynamics Corp.* v. *County of L. A.*, 51 Cal. 2d 59, 62-63 [330 P.2d 794]), and if it wins it need not reimburse the government for the in lieu payments that extinguished its tax liability. Nevertheless, the United States has a vital interest in establishing the validity and correct delineation of the fiscal policy set forth by Congress.*

---

*The purpose of the 1956 amendment to the National Housing Act was set forth in the report of the House Committee on Banking and Currency (H. Rep. No. 2363 on H.R. 11742, 84th Cong., 2d Sess., pp. 48-49) as follows:

"The need for a clarification of this matter has existed since the initiation of the Wherry Act program because of the doubtful validity and effectiveness of various tax statutes of the States as applied to the interest of the mortgagor corporations where the projects are located on lands owned by the United States. The problem has involved the major constitutional question of the right of States to tax the mortgagor's leasehold interest, and has been complicated by the large variety of statutes in the individual States which local taxing officials have attempted to apply to the mortgagor's interests. There has been a substantial amount of litigation on this matter in State and lower Federal courts over the period of the program without uniformly resolving the questions involved. The recent decision of the Supreme Court of the United States in the case of *Offutt Housing Co.* v. *County of Sarpy* (May 28, 1956), [351 U.S. 253 (76 S.Ct. 814, 100 L.Ed. 1151)], upheld the right of local taxing officials in the State of Nebraska to levy certain State and county 'personal property' taxes against the lessee's interest in a title VIII project, measured by the full value of the buildings and improvements. However, as a large portion of the projects have not

Congress determined that local taxing agencies should not secure windfalls by being permitted fully to tax privately held interests in Wherry Act Military Housing Projects when they were also receiving payments from the United States for services ordinarily rendered to taxpayers or being relieved by the United States of the necessity of rendering such services. It concluded that unless such windfalls were prevented, government payments or services would not reduce taxes and thereby allowable rents, but result in the housing projects' carrying more than their share of the expenses of local government. Such windfalls would subvert the purpose of providing housing for government personnel at reasonable rents.

Defendant's resistance to the payment of the tax is based squarely on the federal statute, and accordingly, this case directly involves not only defendant's liability to plaintiff, but the validity and operation of federal fiscal policy defined by federal statute. The interest of the United States in sustaining its fiscal policy by securing an adjudication of the validity and correct interpretation of its statute is fully sufficient to support its intervention whether or not the judgment will directly and immediately affect its pecuniary interests. (*The Exchange* v. *M'Faddon,* 7 Cranch. (U.S.) 116, 146 [3 L.Ed. 287] ; *Florida* v. *Georgia,* 17 How. (U.S.) 478, 494-495 [15 L.Ed. 181] ; *Pennsylvania* v. *Williams,* 294 U.S. 176, 178-179, 186 [55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166] ; *Muench* v. *Public Service Com.,* 261 Wis. 492 [53 N.W.2d 514, 523] ; *Van Riper* v. *Jenkins,* 140 N.J. Eq. 99 [45 A.2d 844, 845, 163 A.L.R. 1343] ; *Mundy* v. *McDonald,* 216 Mich. 444 [185 N.W. 877, 880, 20 A.L.R. 398] ; *Jamaica Gaslight Co.* v. *Nixon,* 110 Misc. 494 [181 N.Y.S. 620, 622] ; *Parker* v. *State of Indiana,* 132 Ind. 419 [31 N.E. 1114] ; see also *Securities etc. Com.* v. *United States Realty etc. Co.,* 310 U.S. 434, 460 [60

---

been subject to State and local taxes, payments in lieu of taxes have frequently been made to local taxing officials in exchange for usual services, such as schools, furnished to the projects. Also, many expenditures have been made by the Federal Government for streets, utilities, schools and other services normally furnished by taxing bodies. As tax payments for a project normally have an ultimate effect on the rentals paid by military and civilian personnel at the military installations, it is important that no payments be made to communities which would constitute a windfall over and above normal taxes. Consequently, it is very important to assure that the project does not duplicate payments for services furnished to it. This duplication would be avoided under the provisions in the bill for deductions from tax payments, as explained above.''

S.Ct. 1044, 84 L.Ed. 1293]; *Coleman* v. *Miller*, 307 U.S. 433, 441-442 [59 S.Ct. 972, 83 L.Ed. 1385, 122 A.L.R. 695]; *Hopkins Fed. Savings etc. Assn.* v. *Cleary*, 296 U.S. 315, 339-341 [56 S.Ct. 235, 80 L.Ed. 251, 100 A.L.R. 1403]; *Rocca* v. *Thompson*, 223 U.S. 317, 330 [32 S.Ct. 207, 56 L.Ed. 453]; *United States* v. *Minnesota*, 279 U.S. 181, 195 [46 S.Ct. 298, 70 L.Ed. 539]; *United States* v. *Rickert*, 188 U.S. 432, 444 [23 S.Ct. 478, 47 L.Ed. 532]; *Georgia* v. *Pennsylvania R. R. Co.*, 324 U.S. 439, 450 [65 S.Ct. 716, 89 L.Ed. 1051]; *In re Debs*, 158 U.S. 564, 584-586 [15 S.Ct. 900, 39 L.Ed. 1092]; *Percy Summer Club* v. *Astle*, 110 F. 486, 489; *Griffin* v. *United States*, 168 F.2d 457, 459; *United States* v. *Fitzgerald*, 201 F. 295, 296-297 [119 C.C.A. 533]; *State of Utah* ex rel. *Johnson* v. *Alexander*, 87 Utah 376 [49 P.2d 408, 415-416]; *Estate of Quinn*, 43 Cal.2d 785, 787 [278 P.2d 692]; *Koehn* v. *State Board of Equalization*, 50 Cal.2d 432, 435-437 [326 P.2d 502].)

The purposes of intervention are to protect the interests of those who may be affected by the judgment (*Florida* v. *Georgia*, 17 How. (U.S.) 478, 494-495 [15 L.Ed. 181]; *Voyce* v. *Superior Court*, 20 Cal.2d 479, 485 [127 P.2d 536]) and to obviate delay and multiplicity of actions (*Belt Casualty Co.* v. *Furman*, 218 Cal. 359, 362 [23 P.2d 293]; *Elms* v. *Elms*, 4 Cal.2d 681, 684 [52 P.2d 223, 102 A.L.R. 811]), but intervention may be denied if these objectives are outweighed by the rights of the original parties to conduct their lawsuit on their own terms. (See *Willett* v. *Jordan*, 1 Cal.2d 461, 465 [35 P.2d 1025]; *Isaacs* v. *Jones*, 121 Cal. 257, 262 [53 P. 793, 1101].) In the present case the United States is entitled to be heard to protect its fiscal policy, and its full participation as a party will assist in securing a judgment that should become definitive of the issues involved in similar situations. It is making common cause with the defendant, and no prejudice to the rights of either plaintiff or defendant will result from its presence. Under these circumstances its right to intervene is clear.

*People* v. *Brophy*, 49 Cal.App.2d 15 [120 P.2d 946], and *Faus* v. *Pacific Elec. Ry. Co.*, 134 Cal.App.2d 352 [285 P.2d 1017], are not contrary to our conclusions herein. In the Brophy case the city of Los Angeles and the attorney general sought to intervene in an action by a subscriber against the telephone company to enjoin discontinuance of service. It was contended that the contract between the company and

the subscriber was illegal because the telephone was being used to communicate racing information. The court held that the contract was not illegal and that its performance could not be enjoined and that therefore the city and the attorney general had no interest that could be served by allowing them to intervene. In the Faus case, the county of Los Angeles sought to intervene in quiet title actions between the plaintiff and the city of San Marino involving abandoned railroad rights of way. The court held that the county's interest in the city's securing the rights of way for public streets was "simply consequential and indirect." (134 Cal.App.2d 352, 359.) The case involved title to real property and was governed, not by a county ordinance enacted to promote county interests, but by applicable state law. In the present case, on the contrary, a federal statute is the heart of the litigation, and its validity and operation is necessarily directly involved.

The order is reversed. The county shall bear the costs of this appeal.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., and Peters, J., concurred.

McComb, J., dissented.