[Civ. No. 22513. Third Dist. Sept. 30, 1983.]

THE PEOPLE ex rel. RICHARD E. ROMINGER, as Director, etc.,
Plaintiff and Respondent, v.
COUNTY OF TRINITY et al., Defendants and Respondents;
SIERRA CLUB, INC., et al., Interveners and Appellants.

**COUNSEL**

Stark, Stewart, Wells & Robinson, Douglas L. Honnold and Francia M. Welker for Interveners and Appellants.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Kathleen E. Gnekow, Deputy Attorney General, for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

## OPINION

**CARR, J.**—Sierra Club, Inc., and Northwest Forest Workers Association (hereafter referred to individually by name or collectively as interveners) appeal from an order sustaining without leave to amend plaintiff State of California's (State) demurrer to interveners' complaint in intervention. ■ Generally, an order denying intervention is appealable. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 43, p. 4057.) In this action interveners' ex parte motion for intervention was granted by the trial court. State successfully demurred to the complaint in intervention, and an order sustaining the demurrer without leave to amend was entered. ■ As we have stated on occasions too numerous to recount, "An order sustaining a demurrer, whether with or without leave to amend, is not appealable." (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 878 [150 Cal.Rptr. 606].) Our teachings have apparently gone unheeded and appellants continue to appeal from the order sustaining the demurrer without leave to amend and omit the important procedural step of entering a judgment of dismissal from which an appeal is appropriately taken. No judgment of dismissal was entered herein. But as we also state, with somewhat monotonous regularity, in the interests of judicial economy and to prevent further delay we treat the superior court's order sustaining the demurrer without leave to amend as the equivalent of a judgment of dismissal and interveners' appeal from that order as an appeal from a judgment of dismissal. (See *id.* at pp. 878-879.)[1]

---

[1]With considerable judicial agility, we have managed to salvage an appealable order from the tangled web of procedural sins of omissions and commissions contained in this record. The scenario commences with a complaint by State against the County of Trinity (County). An answer was filed by County to this complaint. Thereafter, by ex parte order interveners filed their complaint in intervention. State then demurred to the complaint in intervention on the primary ground of lack of standing. Interveners countered with a motion to amend the complaint in intervention. On October 25, 1982, the demurrer and motion for leave to amend were argued and submitted.

Inexplicably, on November 2, 1982, a minute order issued denying *motion for leave to intervene.* On December 1, 1982, interveners filed a motion to vacate the order denying motion to intervene on the basis no such motion was before the court and to reconsider and rule on the motion to amend and the demurrer. State joined in this motion, which was heard and submitted on December 13, 1982. On the same date a minute order issued which (1) sustained State's demurrer without leave to amend; and (2) denied the motion to file an

State's complaint was for declaratory and injunctive relief against County. It alleged that certain County ordinances controlling the use of phenoxy herbicides and pesticides[2] were preempted by the California Food and Agricultural Code and the California Administrative Code sections promulgated pursuant thereto. County answered the complaint, asserting the County ordinances in question were valid.

On July 29, 1982, by an ex parte court order, interveners filed their complaint in intervention. Paragraph I of the complaint identified the Sierra Club, alleged its interests in protecting the environment and in supporting the ordinances, and further alleged its members would be harmed if spraying of phenoxy herbicides resumed in Trinity County. The National Forest Workers Association was not identified in the body of the complaint.

State demurrered to the intervention complaint, asserting it failed to state a cause of action in that interveners' lacked standing to appear in the action. State charged interveners' interest in the litigation was remote and consequential and that interveners would neither gain nor lose by direct effect of the judgment.

In their motion for reconsideration filed after the November 2, 1982, order ruling on a nonexistent motion, interveners argued State was collaterally estopped from denying interveners' interest in the litigation as both the Sierra Club and the Northwest Forest Workers Association had, without objection, intervened in an action brought by State in Mendocino County concerning the validity of a Mendocino County ordinance which prohibited aerial spraying of phenoxy herbicides.[3]

In its order sustaining the demurrer, the trial court referred to the November 2, 1982, order as explanation for its ruling. The November order stated in part:

amended complaint in intervention. No order was made vacating the improvident order of November 2, 1982, denying leave to intervene and no judgment of dismissal was entered on the demurrer ruling. The appeal was taken from both orders (Nov. 2, 1982 and Dec. 13, 1982). Though the order denying leave to intervene dangles slowly in the record and is an appealable order, to convene an appeal in this matter we treat the denial of leave to amend the complaint in intervention as inferentially vacating that order.

[2]County ordinance No. 368, as amended by ordinance No. 368-1, prohibits any application of phenoxy herbicides in the county, with a limited exception for the United States Forest Service. Such prohibition is considered "necessary" by the County to protect "the right of the people of the County of Trinity to be secure in their homes and to enjoy the peaceful, undisturbed use of private property and public lands." County ordinance No. 370, as amended by ordinance No. 8.40-1, requires a permit for the application of any other herbicides, pesticides, and chemical poisons.

[3]This case is pending on appeal before the California Supreme Court (*People* ex rel. *Deukmejian* v. *County of Mendocino* (S.F. 24588, hg. granted July 14, 1983)).

"The proposed complaint in intervention raises issues speculative in nature in that it presupposes first, that the county ordinance will be declared invalid, second that upon such declaration aerial spraying of phenoxy herbicides will occur and lastly that spraying of phenoxy herbicides will cause the injuries and damages alleged.

"Intervention should not be permitted where the issues to be litigated are thus broadened. The defendant County of Trinity has answered and is capable of adequately pursuing the litigation to its proper conclusion. The interests of the proposed intervenors [sic] are prospectively consequential only if the county ordinance is declared invalid and then only if the alleged spraying takes place and the alleged injury and damage in fact would follow."

## DISCUSSION

Code of Civil Procedure section 387, subdivision (a), provides in pertinent part: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, . . ." In this instance, the interveners seek to unite with the defendant County in resisting the claims of the State.

■ The purposes of intervention are to protect the interests of others who may be affected by the judgment and to obviate delay and multiplicity of actions. (*People* v. *Superior Court* (*Good*) (1976) 17 Cal.3d 732, 736 [131 Cal.Rptr. 800, 552 P.2d 760].) Granting or denying leave to intervene is in the discretion of the trial court. (*Isaacs* v. *Jones* (1898) 121 Cal. 257, 261 [53 P. 793]; *California Physicians' Service* v. *Superior Court* (1980) 102 Cal.App.3d 91, 95 [162 Cal.Rptr. 266].)

■ The facts of a particular case ultimately must govern the exercise of the court's discretion (*Isaacs* v. *Jones, supra,* 121 Cal. at p. 261); however, certain principles in the application of section 387 have evolved from pertinent case law. First, the intervener's interest in the outcome of the litigation must be direct and immediate rather than consequential. (*Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 661, 663 [91 P.2d 599].) Specifically, the interest in the litigation "must be . . . of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment." (*Elliott* v. *Superior Court*

(1914) 168 Cal. 727, 734 [145 P. 101].) An interest is insufficient for intervention "when the action in which intervention is sought does not directly affect it although the results of the action may indirectly benefit or harm its owner." (*Continental Vinyl Products Corp.* v. *Mead Corp.* (1972) 27 Cal.App.3d 543, 550 [103 Cal.Rptr. 806].) Second, the interveners may not enlarge the issues so as to litigate matters not raised by the original parties. (*Wright* v. *Jordan* (1923) 192 Cal. 704, 714 [221 P. 915].) Finally, intervention must be denied if the reasons therefor "are outweighed by the rights of the original parties to conduct their lawsuit on their own terms." (*County of San Bernardino* v. *Harsh California Corp.* (1959) 52 Cal.2d 341, 346 [340 P.2d 617].) The intervener Sierra Club purports to represent several interests on behalf of itself and its members. The Sierra Club asserts that it and its members have an interest in the enforcement of laws of the County of Trinity protecting the environment. It asserts an interest stemming from its members' active support of the County ordinances at issue in this case. Finally, the Sierra Club asserts that its members will be harmed if the spraying of phenoxy herbicides resumes in Trinity County. In its proposed amended complaint, the Sierra Club more specifically alleged that its members use forest lands that would be sprayed with phenoxy herbicides without the ban provided by County ordinance No. 368, and that exposure to these chemicals would harm its members. In alleging that its members would be harmed unless phenoxy herbicides were prohibited, the Sierra Club places its members among those whom the ordinance was specifically designed to protect, and alleges an injury which the ordinance was specifically designed to prevent.

The question remains whether these "interests" are sufficiently "direct and immediate" to sustain intervention. Although each case must be decided on its particular facts, prior cases provide useful illustrations of the application of section 387.

■ First, in order for an interest to be sufficiently direct and immediate, it is not necessary that the intervener have a pecuniary interest in the litigation. (*County of San Bernardino* v. *Harsh California Corp., supra,* 52 Cal.2d at pp. 345-346.) Second, it is not necessary that the intervener have a specific legal or equitable interest in the subject matter of the litigation. In *Bustop* v. *Superior Court* (1977) 69 Cal.App.3d 66, 71 [137 Cal.Rptr. 793], the court held a group of white parents had sufficient interest " 'in a sound educational system and in the operation of that system in accordance with the law' " to permit intervention in an action wherein a school district was required to formulate a desegregation plan. Such plan would have a "direct social, educational and economic impact" on all students and parents in the district. (*Ibid.*)

In *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873, the court upheld the intervention of a school district in an action to invalidate a city resolution adopting a school impact fee policy. The court held that a public agency such as the school district "may intervene in an action in order to uphold the validity of a statute affecting it in a substantial way." (At p. 882.)

In *County of Fresno* v. *Andrus* (9th Cir. 1980) 622 F.2d 436, a group of farmworkers who desired to purchase federally irrigated excess farmlands were permitted to intervene in an action to enjoin the Secretary of Interior from issuing regulations governing excess land sales. The court held the farmworkers "are precisely those Congress intended to protect with the reclamation acts and precisely those who will be injured if the Department of the Interior does not act expeditiously in accordance with the mandates of the reclamation acts and the Administrative Procedure Act." (At p. 438.) (See also, *Baroldi* v. *Denni* (1961) 197 Cal.App.2d 472 [17 Cal.Rptr. 647] [a voter and signer of a recall petition was permitted to intervene in an action by city council members to void the petition]; *Simac Design, Inc.* v. *Alciati* (1979) 92 Cal.App.3d 146 [154 Cal.Rptr. 676] [groups of voters and residents who had drafted and organized voter support for a growth control initiative were permitted to intervene in an action challenging the initiative after it was enacted].)

On the facts of this case, we conclude the Sierra Club has alleged a sufficiently direct and immediate interest in the outcome of this litigation to permit intervention. In doing so, we do not conclude, as the interveners apparently urge us to do, that the mere support of a statute by a person is sufficient to justify intervention by such person in an action challenging such statute. Nor do we conclude that a general political interest in upholding a statute is sufficient to intervene in a challenge to it. We reiterate that one of the purposes of intervention is "to protect the interests of those *who may be affected by the judgment* . . . ." (*County of San Bernardino* v. *Harsh California Corp., supra,* 52 Cal.2d at p. 346; italics added.) In each of the cases herein cited, the intervener had more than a general interest in upholding the statute in question; rather the intervener had a specific interest that would be directly affected in a substantial way by the outcome of the litigation. The fact the interveners and their members actively supported the ordinances in question and that they have a general interest in the enforcement of environmental laws alone will not support their intervention.

In alleging that its members would be harmed if spraying of phenoxy herbicides resumes in Trinity County in the absence of the ordinances, the Sierra Club does allege specific harm and places itself among the persons that the ordinances were specifically designed to benefit and protect. Where

a statute exists specifically to protect the public from a hazard to its health and welfare that would allegedly occur without such statute, members of the public have a substantial interest in the protection and benefit provided by such statute. If a party brings an action to invalidate such statute such action has an immediate and direct effect on the public's interest in protecting its health and welfare. On this basis we conclude the Sierra Club, as representative of its members who reside in and use the resources of Trinity County, has a direct and immediate, rather than consequential and remote, interest in this litigation.[4]

We do not find persuasive the State's argument that the Sierra Club's interest is "remote and consequential" because actual physical harm depends on some unknown third person applying for and receiving a permit to spray phenoxy herbicides. In *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873, the court rejected plaintiff's argument that the city could reject the school district's application for impact fees, and therefore the latter's interest was not "direct" in that it would not necessarily "gain or lose" by the direct outcome of the litigation. The court stated that to sustain intervention "it is not necessary that his interest in the action be such that he will *inevitably* be affected by the judgment. It is enough that there be a substantial *probability* that his interests will be so affected." (*Id.* at p. 881, original italics.)

Similarly, in *Bryant* v. *Yellen* (1980) 447 U.S. 352 [65 L.Ed.2d 184, 100 S.Ct. 2232], farmworkers sought to intervene to press an appeal from a decision holding that section 46 of the Omnibus Adjustment Act of 1926 was inapplicable to the Imperial Valley. The farmworkers claimed that they desired to purchase farm lands under the act. The court permitted the farmworkers access to intervene even though excess land would be available only if the owners decided to sell it. The court held that the farmworkers could intervene "even though they could not with certainty establish that they would be able to purchase excess lands if § 46 were held applicable." (*Bryant* v. *Yellen, supra,* 447 U.S. at p. 367 [65 L.Ed.2d at p. 197].)

We find such reasoning persuasive here. In the absence of the instant ordinance, it is highly likely that the use of phenoxy herbicides in Trinity County would resume. The present controversy arose because the State Director of Food and Agriculture ordered the Trinity County Agricultural Commissioner to process an application for use of phenoxy herbicides, in

---

[4]We do not consider it relevant that the intervener in *Timberidge, supra,* was a public agency as opposed to a private party. Considering the purpose of intervention, the relevant factor is whether the party is among "those who may be affected by the judgment" (*County of San Bernardino* v. *Harsh California Corp., supra,* 52 Cal.2d at p. 346), not whether the party is public or private.

violation of County ordinance No. 368. The State alleges in its complaint that numerous persons would apply for permits to use phenoxy herbicides in the absence of ordinance No. 368. The County ordinance is the only factor which prevents the present use of phenoxy herbicides in Trinity County. The fact that the actual physical injury to members of the Sierra Club from exposure to phenoxy herbicides depends on the actions of others does not render their interest in this case "speculative" or "remote."

The cases relied upon by the respondent are factually distinguishable. In *Jersey Maid Milk Products Co.* v. *Brock, supra,* 13 Cal.2d 661, the court upheld the denial of intervention by a group of milk producers in an action brought by other milk producers to enjoin the state from enforcing a milk industry stabilization plan against them. The court found the interveners' interest insufficient because the judgment itself would have no binding effect on the interveners.

In this case if the prohibition against phenoxy herbicides is invalidated, it is invalidated as to *all* persons in the County, immediately removing the protection considered "necessary" to public health and welfare. Moreover, the interveners in *Jersey Maid Milk, supra,* still had the opportunity to defend themselves if the state attempted to enforce the stabilization plan against them. In this case, if the County ordinance is invalidated, the Sierra Club and its members would have no further judicial recourse to defend their interests in upholding the county ordinances.

*Continental Vinyl Products Corp.* v. *Mead Corp., supra,* 27 Cal.App.3d 543, did not, as in this case, involve a party attempting to intervene in an action to invalidate a statute established specifically for his protection.

Although we conclude the Sierra Club, as representative of its members, has a sufficiently direct and immediate interest to sustain its intervention in this case, it remains to be determined whether its intervention would impermissibly enlarge the issues in this case and whether its reasons for intervention are outweighed by the right of the original parties to litigate in their own manner. (*California Physicians' Service* v. *Superior Court, supra,* 102 Cal.App.3d at p. 95.)

■ The respondent contends intervention must be denied because the question of the environmental effects of pesticide use would impermissibly broaden the scope of this litigation. We disagree. The Sierra Club does not make assertions as to the adverse effects of pesticides for the purpose of introducing new issues for litigation, but only for the purpose of establishing its interest in the litigation. In its complaint in intervention, the Sierra Club raises no new legal or factual issues to be decided by the trial court. The

only issue before the trial court is the validity of the County pesticide ordinances in the face of State pesticide regulations. The relative merits of the ordinances and regulations have no bearing on that issue.

Finally, we conclude that the original parties' interest in litigating this case on their own terms does not outweigh the interests of the Sierra Club in intervening. Although the County is concerned with the protection of its residents, its interest in this case is primarily that of defending its jurisdiction to enact such pesticide control ordinances. The interest of the members of the Sierra Club, however, as direct beneficiaries of the County pesticide ordinances, stems from their concern for their own health and well-being. This interest is compelling enough that they should be permitted to intervene.

We are not here dealing with two private parties litigating a private matter but rather with two public bodies litigating the fate of ordinances designed to protect the public's health and security. Any argument that the parties should be permitted to litigate without the "interference" of the very people those ordinances were designed to protect is an unacceptable assertion of bureaucratic dominion and control to the exclusion of the citizenry.

The Sierra Club has alleged a sufficient interest to permit intervention. However, the Northwest Forest Workers Association has alleged no interest in this case other than as a party to a similar litigation. We find this in itself insufficient to sustain intervention. It is reasonably possible the association could amend the complaint in intervention to allege facts sufficient to sustain intervention on behalf of its members, in the same manner as the Sierra Club. ▮ It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that a defect can be corrected by amendment. (*Cordonier* v. *Central Shopping Plaza Associates* (1978) 82 Cal.App.3d 991, 999 [147 Cal.Rptr. 558].)

The trial court abused its discretion in sustaining the State's demurrer to the Sierra Club's complaint in intervention without leave to amend. This conclusion renders it unnecessary to reach the issues of whether the Sierra Club could intervene on grounds of res judicata or collateral estoppel.

The judgment (order) is reversed.

Blease, Acting P. J., and Sims, J., concurred.